Bryan Keith PARKS, Appellant,

v.

The STATE of Texas, State.

No. 2–92–018–CR.

Court of Appeals of Texas, Fort Worth.

July 21, 1993.

David K. Chapman, Susan Ayres, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Betty Marshall and Charles M. Mallin, Assts., Edward L. Wilkinson, Peter Keim, Barry Shelton, Assts., Fort Worth, for State.

Before FARRIS, WEAVER and DAY, JJ.

## OPINION

DAY, Justice.

Bryan Keith Parks appeals his conviction for aggravated possession with intent to deliver amphetamine weighing over 28 grams, but less than 400 grams. TEX. HEALTH & SAFETY CODE ANN. §§ 481.103(a)(3) & 481.113(c) (Vernon 1992). The jury assessed punishment, enhanced by a prior conviction, at 30 years confinement.

We affirm.

In nine points of error, Parks complains: (1) the warrantless search of his automobile trunk violated his right to be protected against unreasonable searches and seizures under the Fourth Amendment and the Texas Constitution; (2) the evidence is insufficient to support his conviction; (3) the trial court improperly overruled four of defense counsel's objections to the prosecutor's prejudicial jury argument; and (4) the trial court improperly overruled defense counsel's objections to the introduction of hearsay testimony on the probable cause issue.

Around 9:00 p.m. on March 20, 1991, Officer Bobby Beasley, of the Bedford Police Department, received a tip from a confidential informant that drugs were being trafficked from room 148 at the Days Inn in North Richland Hills, Tarrant County. The informant was known personally to Beasley and had previously provided information leading to the seizure of amphetamine and the identification of a narcotics trafficker.

Over defense counsel's objection, Beasley testified the informant stated Parks and a person named Tracy Blaisdale had a large quantity of amphetamine in room 148 and would soon be leaving the room to make deliveries in Tarrant County. According to Beasley, the informer described Parks as being approximately five feet, eleven inches tall, weighing 195 pounds, with brown hair and a very noticeable receding hairline. The informant also described Blaisdale as five feet, two inches tall, weighing about 110 pounds, with long brown hair.

Beasley set up surveillance and observed the hotel room from 100 to 150 yards away. Beasley saw a man and woman leave room 148 and get into a Ford station wagon. Beasley did not know who the man was, but testified the woman matched the informer's description of Tracy Blaisdale. He followed the couple to a nearby Jet Gas station and then resumed surveillance of the hotel room. After awhile, the Ford station wagon returned to the hotel parking lot, and the man and woman re-entered room 148.

Thirty minutes later, Beasley listened to a telephone conversation between his confidential informant and a woman in room 148. According to Beasley, the woman, who identified herself as Tracy, told the informant she and a person named Bryan would be leaving the room shortly to make an amphetamine delivery in Hurst, Tarrant County. Beasley testified Tracy asked the informant if he had a set of scales "to weigh the stuff up."

About ten minutes later, Beasley saw two men and a woman leave room 148. The woman and one of the men were the couple Beasley had previously observed leaving the hotel room. That man again left the hotel in a Ford station wagon. The second man carried a cardboard box and a small, dark bag out of the hotel room. The second man matched the informant's description of Parks, and Beasley identified him as Parks at trial.

Beasley lost sight of the second man and the woman for fifteen to twenty seconds as they walked into a corridor between two buildings. When he saw them again they were in a Nissan, and Parks was driving. Beasley did not see what Parks did with the bag and box.

Parks drove to the same Jet Gas station, where he was stopped by police, arrested, and searched. A search of Parks' person revealed a driver's license in the name of Ceaser (sic) Tinoco, some empty Ziploc baggies, and a key to room 148. Beasley testified that, in his experience as a narcotics investigator, the baggies were consistent with what narcotics traffickers used to package and resell amphetamine. No controlled substances were found on Parks or in the passenger compartment of the Nissan, however.

Police officers then searched the trunk of the vehicle and discovered a box and a bag containing what appeared to be contraband. According to Beasley, the box and bag were the same ones he had seen Parks carry out of the hotel room.[1] Inside the containers were several bags of marijuana, several bags of amphetamine in both powder and pill form, a cutting agent commonly used to increase the bulk of controlled substances, and various drug paraphernalia.

---

1. Parks asserts Beasley could not be sure the box he saw Parks carry was the same box discovered in the trunk. Beasley testified that the box and bag looked familiar to him because they appeared to be the same ones Parks had carried from the hotel room. On cross-examination, Parks merely acknowledged he could not state with exact accuracy that the box Parks carried and the one discovered in the trunk were the same because Parks had passed out of sight for a few seconds.

Parks testified during the guilt/innocence phase of trial and denied having any knowledge of the amphetamine discovered in the trunk of the Nissan. Parks testified that he had borrowed the Nissan from a friend, Von Williams, about a week before the arrest but had driven the car very little and had never looked in the trunk.[2] He also testified that he had never seen the box or bag found in the trunk.

█ In his first two points of error, Parks contends the search of the automobile trunk violated his rights under the Fourth Amendment and Article I, Section 9 of the Texas Constitution because it was not based on probable cause or conducted under exigent circumstances.

█ Texas courts apply the "totality of the circumstances" test to determine whether a warrantless search or seizure was based upon probable cause. *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983); *Amores v. State*, 816 S.W.2d 407, 413 (Tex.Crim. App.1991). Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense. *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879, 1890 (1949); *Amores*, 816 S.W.2d at 413; *Woodward v. State*, 668 S.W.2d 337, 345 (Tex.Crim.App. 1982) (opinion on reh'g), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).

Beasley had personally watched Parks carry both a box and a bag from his hotel room in the direction of his car. Fifteen to twenty seconds later, Beasley saw Parks in his car, leaving the hotel parking lot. Based upon the corroborated informer's tip, Beasley detained Parks and searched his vehicle. When the search of the passenger compartment revealed neither the box nor the bag, police officers proceeded to search the trunk. Even though Beasley did not personally see Parks place the bag and box in the trunk, we believe he had probable cause, based on all the surrounding circumstances, to believe these items were in the trunk and contained controlled substances.

Parks' assertion that he had a greater expectation of privacy in the locked trunk of his automobile is contrary to both federal and state law. This argument is based upon the rule in *Gill v. State*, 625 S.W.2d 307, 319–20 (Tex.Crim.App. [Panel Op.] 1981) (opinion on reh'g),[3] which the Court of Criminal Appeals expressly overruled in *Osban v. State*, 726 S.W.2d 107 (Tex.Crim. App.1986), *overruled to the extent in conflict with Heitman v. State*, 815 S.W.2d 681, 684, 690 (Tex.Crim.App.1991). The *Osban* court stated:

> If probable cause to search part of a vehicle is not inevitably probable cause to search the entire vehicle[,] this is because there is not enough evidence to warrant a man of reasonable caution in suspecting that contraband or evidence of a crime can be found throughout the entire vehicle.

*Id.* 726 S.W.2d at 110.

█ Parks also argues that, because both he and his companion were arrested, the police officers could very easily have obtained a warrant to search the trunk of the Nissan, as they did room 148. Parks contends the officers' failure to do so was a violation of his Fourth Amendment rights. Neither the State nor Parks cites us to any record references that give an indication of why Parks and his companion were arrested prior to the search of the automobile, but Parks does not complain the arrest was

---

2. The car was rented in the name of Vonnie Ray Williams.

3. The *Gill* court ruled that an individual has a greater expectation of privacy in a locked trunk of an automobile than in the passenger compartment of the vehicle for two reasons. First, items located in the interior of an automobile can be seen in plain view, while objects in the trunk cannot. *Id.* 625 S.W.2d at 319. Second, it is often much more difficult to break into a locked trunk than into the interior of a motor vehicle. *Id.*

improper. Thus, for purposes of this opinion, we will assume the arrest was lawful.

In *Osban*, which is factually similar to the instant case, the appellant was likewise under arrest when police officers searched his car trunk. 726 S.W.2d at 108. Even though the officers in that case did not obtain a warrant before examining the trunk, the Court of Criminal Appeals held the search was proper because it was based on probable cause. *Id.* at 108, 111. *See also Delgado v. State*, 718 S.W.2d 718, 722–24 (Tex.Crim.App.1986). We can think of no reason to rule differently in this case.

We recognize the police officer in *Osban* conducted a valid search incident to Osban's arrest of the passenger compartment of his vehicle and found the contraband that formed the basis of his probable cause to extend the search to the trunk. *Osban*, 726 S.W.2d at 108, 111. In this case, the mere fact that the search of the passenger compartment of Parks' vehicle failed to expose the controlled substances did not detract from the reasonableness of the officers' search of the whole vehicle. The probable cause underlying the whole search was based upon Beasley's corroboration of his informant's tip, not on the search incident to arrest. "The scope of a warrantless search based on probable cause is no narrower—and no broader— than the scope of a search authorized by a warrant supported by probable cause." *Osban*, 726 S.W.2d at 111 (quoting *United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572, 593 (1982)).

■ Also, there is a considerable difference between the search of a hotel room after its occupants' arrest and a post-arrest search of an automobile trunk. Unlike the situation with a hotel room or residence, once the occupants of a vehicle are arrested, their vehicle is generally seized as a matter of course. The police in this case arrested Parks and his companion at a gas station and impounded their vehicle in accordance with police department procedures. Thus, the search of the automobile, including its trunk, was inevitable. At the very least, law enforcement officers could have lawfully explored the inner recesses

of the trunk pursuant to an inventory search. *See Delgado*, 718 S.W.2d at 721– 22. We see no reason to penalize the State for a warrantless search based on probable cause that would have eventually taken place anyway.

We overrule Parks' first point of error.

■ In the alternative, however, Parks urges this court to interpret Article I, Section 9 of the Texas Constitution as affording a greater degree of individual protection against unreasonable searches and seizures than the Fourth Amendment.

■ In *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1992), the Court of Criminal Appeals held that Texas appellate courts are not bound by United States Supreme Court decisions addressing Fourth Amendment search and seizure rights when analyzing and interpreting comparable rights under Article I, Section 9 of the Texas Constitution. *Heitman*, 815 S.W.2d at 690 (the framers of the 1845 Texas Constitution did not intend that it be interpreted in lock-step with the federal constitution). A court can therefore interpret its state constitution as affording its citizens additional rights. *Id.*

*Heitman* does not, however, go so far as saying that any particular question raised under Tex. Const. art. I, § 9 must be decided more favorably to the defendant than would be the case under the Fourth Amendment. Nor does it establish a specific rule of divergence from Fourth Amendment case law.

Relying on *Gill*, 625 S.W.2d at 319, Parks urges that the Court of Criminal Appeals has previously emphasized an individual's greater privacy interest in the locked trunk of an automobile than in the passenger compartment. As we have previously noted, the Court of Criminal Appeals has overturned the rule established in *Gill. Osban*, 726 S.W.2d at 110. Notably, the rule in *Gill* was struck down because of its "inherent illogic" and its total lack of support in Texas case law rather than any trends or changes in federal law. *See id.* at 109, 110 (*Gill* rule overturned irrespec-

tive of any effect *United States v. Ross* had on the decision).

For this reason, we, as an intermediate court, are reluctant to reject an opinion of the Court of Criminal Appeals by weighing it against a later opinion of the same court (*i.e.*, *Heitman*) that does not speak definitively on the reasonable expectation of privacy issue. *See Johnson v. State*, 834 S.W.2d 121, 124 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). *Osban* remains the law of this state on an individual's privacy interest in his automobile trunk until it is expressly overruled.

We overrule Parks' second point of error.

■ In point three, Parks complains the evidence is insufficient to sustain his conviction.

■ In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the verdict. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Wilson v. State*, 654 S.W.2d 465, 471 (Tex. Crim.App.1983) (opinion on reh'g).

"This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

■ The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. *See Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *See id.* The standard for review is the same for direct and circumstantial evidence cases. *Butler v. State*, 769 S.W.2d 234, 238 (Tex.Crim.App.1989).

■ In order to prove its case, the State was required to show beyond a reasonable doubt that Parks (1) intentionally or knowingly [4] exercised care, control, and management over the amphetamine and (2) knew that what he possessed [5] was contraband. TEX.HEALTH & SAFETY CODE ANN. § 481.-113(a) (Vernon 1992); *Humason v. State*, 728 S.W.2d 363, 364 (Tex.Crim.App.1987). It is not enough for the State to show that a defendant was merely present in the vicinity of a controlled substance. Rather, the State must provide evidence of "affirmative links" between a defendant and the contraband. *Id.* at 365–66.

Parks contends the State failed to affirmatively show that he intentionally or knowingly possessed amphetamine because Officer Beasley did not personally see Parks place the contraband in the trunk of the Nissan. Parks further contends the State failed to show he knew the nature of the controlled substance.

In support of his position, Parks points out he did not have exclusive control of the Nissan. He testified at trial the car was not his; rather, he had borrowed it about a week before, and a friend had borrowed it

---

**4.** A person acts intentionally ... with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly ... with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly ... with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
TEX.PENAL CODE ANN. § 6.03(a) & (b) (Vernon 1974).

**5.** "Possession" means actual care, custody, control, or management. TEX.HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 1992).

for awhile on the night of Parks' arrest. Parks also denied ever opening the trunk or knowing what was inside it. No drugs were found in the passenger compartment or on Parks himself, and there was no testimony the vehicle smelled of amphetamines.

We have previously discussed much of the State's evidence. Officer Beasley received a tip from a reliable informant that Parks possessed amphetamine. The informer provided Parks' name, his identification, and the address of the hotel where drug trafficking was allegedly taking place. Police surveillance corroborated this information. Beasley listened to a telephone conversation between the informant and Parks' accomplice during which amphetamine deliveries in the area were discussed. A few minutes later, Parks and his companion left the hotel room. Parks was carrying a box and a bag. Although officers did not actually see Parks place the containers in his car trunk, Beasley lost sight of Parks for only fifteen to twenty seconds. After officers stopped Parks' vehicle, he referred to his companion as "Tracy." Tracy was the name of the person who discussed the drug deliveries with the informer by telephone. Beasley testified the keys to the car were in the ignition. Presumably, one of those keys was used to obtain access to the trunk, as no mention is made of having to pick or force the latch. The box and bag in the trunk appeared to be the same as those Parks carried as he left room 148. Controlled substances were found in the containers, in amounts commonly associated with a "drug dealer's amount."

The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be afforded their testimony. *Vanderbilt v. State,* 629 S.W.2d 709, 716 (Tex.Crim.App.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982). Jurors may draw reasonable inferences and make reasonable deductions from the evidence as presented to them within the context of the crime. *Benavides v. State,* 763 S.W.2d 587, 588–89 (Tex.App.—Corpus Christi 1988, pet. ref'd); *see also Stanfield*

*v. State,* 152 Tex.Crim. 324, 213 S.W.2d 837, 837 (1948).

Therefore, the jury could have chosen to reject Parks' testimony that he never opened the trunk of the Nissan and to infer from the State's evidence that the box and bag found in the trunk were the same ones Parks carried with him from the hotel room. Based upon our review of the entire record, we find the State established sufficient affirmative links between Parks and the amphetamine to sustain his conviction. *See McNary v. State,* 747 S.W.2d 932, 937 (Tex.App.—Dallas 1988) (affirmative links between defendant and contraband established on similar facts), *pet. ref'd,* 772 S.W.2d 135 (Tex.Crim.App.1989).

We overrule point of error three.

In points four through seven, Parks contends the trial court committed reversible error when it overruled defense counsel's objections to the prosecutor's prejudicial jury arguments.

Parks first complains of the following argument:

[PROSECUTOR]: Remember the information provided to Officer Beasley by his confidential informant. He goes to the hotel room, while there, he enters into a conference call with his confidential informant and room 148. There he talks to Tracy, or listens to a conversation between the informant and Tracy who mentions Bryan's in the shower, they're fixing to leave. And that the informant located in Hurst *will be the first stop* that they make that night. The informant also confirms—[Emphasis supplied.]

[DEFENSE COUNSEL]: We object. We don't recall [any] such evidence. That's not supported by the evidence. They were going to meet the informant.

THE COURT: Overruled.

Parks claims the italicized portion of the argument was totally unsupported by the record and was calculated only to inflame the minds of the jury.

Concerning the telephone conversation about the amphetamine deliveries, Officer Beasley testified: (1) the purpose of the

telephone call was to attempt to establish when the occupants of room 148 would be leaving the hotel to make deliveries; (2) a delivery was to be made to the informant in south Hurst, Texas; and (3) some of the people in room 148 were planning to leave shortly for the southern area of Hurst to make an amphetamine delivery and borrow a set of scales.

■ Jury argument is proper if it is a reasonable deduction from the evidence. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex. Crim.App.1988). We believe the statement complained of falls into this category.

Point of error four is overruled.

■ In point five, Parks complains of a second portion of the prosecutor's jury argument:

> [PROSECUTOR]: And although [Parks] continually told you he didn't have a watch, remember Officer Beasley said that he got there at 9:45. Never saw anybody named Dillman, just Hogg, Whisenant and Parks.
>
> Beasley got there at 9:45. Well, what time does Dillman arrive the last time at the motel room? 9:30. Before Beasley gets there. And what time does Dillman leave the motel room? 9:37. Now, folks for a man who does not have a watch, isn't it convenient that he knows that?
>
> [DEFENSE COUNSEL]: Your Honor, that's outside the record. I think it's undisputed that the police officer arrived there, according to his own calculations, at 10:05.

The trial court instructed the jury to remember the evidence but overruled defense counsel's request for an instruction to disregard.

Again, Parks claims the comments about Beasley's time of arrival were totally unsupported by the record and were calculated to inflame the minds of the jury.

We find Parks failed to preserve error on this point because defense counsel did not object to the statement about Beasley's time of arrival when it was first made. *See* TEX.R.APP.P. 52(a); *Cain v. State,* 549 S.W.2d 707, 715 (Tex.Crim.App.) (an objection must be made as soon as the ground for it becomes apparent), *cert. denied,* 434 U.S. 845, 98 S.Ct. 149, 54 L.Ed.2d 111 (1977); *Smith v. State,* 842 S.W.2d 401, 406 (Tex.App.—Fort Worth 1992, pet. ref'd).

We overrule point of error five.

■ By point six, Parks asserts the prosecutor both argued matters outside the record and injected his personal opinion on those matters. At the punishment phase of trial, the prosecutor commented that society has never been very good at legislating morality and then discussed drug problems that could arise in the future. Although the defense raised several objections to this particular line of argument, Parks attacks only one portion of it on appeal:

> [PROSECUTOR]: Someday our local dope cook will have his factory right next to Miller Brewery. Someday.
>
> But for sure—the only thing we know for sure, is that only society—only we can allow it to happen. As a father, I don't relish that prospect.
>
> [DEFENSE COUNSEL]: Your Honor, here again, he's outside the record. Talking about his family and making what is purley [sic] a prejudicial and emotional appeal to the jury based upon personal prejudices and outside the record. We object to it.
>
> THE COURT: Overruled.

Relying on *Boyd v. State,* 643 S.W.2d 700, 706 (Tex.Crim.App. [Panel Op.] 1982) and *Romo v. State,* 593 S.W.2d 690, 695 (Tex.Crim.App. [Panel Op.] 1980), *overruled on other grounds, Wagner v. State,* 687 S.W.2d 303, 313 (Tex.Crim.App. [Panel Op.] 1984), Parks claims this argument is of the type previously rejected by Texas courts as improper. Neither of those cases addresses the propriety of the type of argument made in this instance, however.

■ Jury argument is proper if it falls into one of four categories: (1) summation of the evidence presented at trial; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement. *Gaddis,* 753 S.W.2d at 398. As a reviewing court, we must examine challenged jury argu-

ment in light of the entire record, *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex. Crim.App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992), and consider the remark in the context in which it appears. *Gaddis*, 753 S.W.2d at 398.

In this case, the issue addressed by the contested argument was that we, as a society, must act to insure a decrease, rather than an increase, of drug-related problems within our nation. As such, we believe the prosecutor's comments were a proper plea for law enforcement. *See Montelongo v. State*, 644 S.W.2d 710, 716 (Tex.Crim.App. [Panel Op.] 1980) (plea for law enforcement, even though "maudlin" and cast in "purple prose," was not improper where it did not inject incriminating facts into the record, describe the offense in lurid detail, or include disparaging references to accused's guilt).

■■■■■ Even assuming, for argument's sake, that the complained of argument was improper, not every inappropriate remark made during closing arguments requires reversal. *See Hernandez*, 819 S.W.2d at 820. Based on our review of the record and the context in which the contested argument was made, the trial judge could have reasonably concluded the argument would not have any prejudicial effect on the minds of the jurors. *See Logan v. State*, 698 S.W.2d 680, 682 (Tex.Crim.App. 1985) (whether an argument is harmful enough to warrant reversal is ultimately determined on the basis of the argument's *probable* effect on the minds of the jurors). Thus, the trial court did not abuse its discretion in overruling the defense's objection.

We overrule Parks' sixth point of error.

■■■■ In point seven, Parks complains of the following argument, also made during the punishment phase of trial:

> [PROSECUTOR]: Well, folks, the defendant didn't take his option of living a law-abiding life. He didn't do that, he sold dope. And now—
>
> [DEFENSE COUNSEL]: Now, Your Honor, there again he's outside the rec-

ord. The proof does not show the defendant sold any dope.

> THE COURT: Overruled.

The indictment in this instance alleged Parks intentionally and knowingly possessed amphetamine with intent to deliver it. The jury found Parks guilty of the offense as alleged in the indictment. We therefore conclude the prosecutor's comment was a proper summation of the evidence presented at trial and a reasonable deduction therefrom. *See Gaddis*, 753 S.W.2d at 398; *see also Cazares v. State*, 488 S.W.2d 110, 112 (Tex.Crim.App.1972); *Archer v. State*, 474 S.W.2d 484, 485 (Tex. Crim.App.1971).

We overrule point of error seven.

■■■■ By his eighth and ninth points, Parks complains the trial court improperly overruled the defense's objection to the State's introduction of hearsay testimony on the probable cause issue.

■■■■ Hearsay testimony relating to the existence of probable cause is not admissible if that issue is not before the jury. *Smith v. State*, 574 S.W.2d 555, 557 (Tex. Crim.App. [Panel Op.] 1978). An officer's actions, (*e.g.*, an arrest or search) may be made an issue before the jury, however, *see* TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1993), and thus it may be necessary for the officer to testify not only about how he happened upon the scene, but also regarding the specific information received so that the jury may resolve any issues regarding an officer's actions. *Schaffer v. State*, 777 S.W.2d 111, 115 n. 4 (Tex.Crim.App.1989).

Parks asserts probable cause was not a jury issue in this case because there was no disagreement about the facts upon which the probable cause was based. *See* article 38.23(a). Rather, Parks contends any disagreement was limited to the interpretation of those facts.

Defense counsel cross-examined Officer Beasley about the circumstances surrounding the search of the trunk. Parks himself requested a jury instruction on the probable cause issue. Over the State's objection,

the trial court included the instruction in the jury charge.

In addition, during closing arguments, the defense questioned the credibility of Beasley's testimony that he saw Parks carry a box and bag from the hotel room because the State did not produce Beasley's partner to corroborate that testimony. The defense also pointed out how Beasley lost sight of Parks when he went around a building. Noting that two cars left the hotel parking lot at the same time, defense counsel questioned why Beasley followed and searched Parks and his car when the second car was not followed. Finally, defense counsel reiterated that Parks did not own the vehicle searched, that Parks had no contraband or drug paraphernalia on his person, and that none was found in the passenger compartment of the automobile.

We believe the evidence in this case, particularly the fact that Officer Beasley did not actually see Parks place the box and bag he carried from the hotel room into the trunk of the car, coupled with the defense's jury arguments, was sufficient to place the probable cause issue before the jury. Accordingly, we find the trial court properly admitted the testimony of which Parks complains.

We overrule points of error eight and nine.

The trial court's judgment is affirmed.