Gordon Newell LEWIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–05–00170–CR.

Court of Appeals of Texas, Waco.

March 22, 2006.

John F. Curry, Office of Public Defender, Wichita Falls, for appellant.

Barry L. Macha, John W. Brasher, Wichita County Dist. Attys., Wichita Falls, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted Gordon Newell Lewis of felony driving while intoxicated and assessed his punishment at six years' imprisonment. Lewis contends in his sole issue that the court abused its discretion by denying his motion for mistrial premised on the State's alleged improper argument that the jury should consider the prior DWI convictions to which he had stipulated as evidence of guilt. We will affirm.

Under Tamez[1] and its progeny, Lewis stipulated to the two prior DWI convictions alleged in the indictment. The parties referred briefly to the stipulation in their opening statements and the State read the stipulation to the jury just before it rested. The court instructed the jury in the charge that it could not consider the prior convictions as evidence of Lewis's guilt.

During argument, the parties again referred to the prior convictions. In the State's opening argument, the prosecutor reminded the jurors that Lewis had stipulated to the priors, thus satisfying the State's burden of proof on that element of the felony DWI charge. Defense counsel placed emphasis on the court's instruction that the prior convictions could not be considered as evidence of guilt but spent the majority of his argument focusing on the sufficiency of the evidence to establish that Lewis was intoxicated on the occasion in question.

In the State's closing argument, the prosecutor spent most of his argument on the issue of intoxication in response to the argument of defense counsel. Near the end of the State's argument, the following exchange transpired which serves as the basis for Lewis's appellate complaint:

State: And so anyway, ladies and gentlemen, ultimately it's in your hands. He was impaired. Think about his actions. 20 miles over the speed limit. We're not talking about five over, we're talking about 20 miles over. A child in the car; he's been drinking; he's out with cold beer in his car again. And then all the other stuff we've talked about. And he does all of that. And then there's the stipulation in evidence. This isn't his first time, it's his third time. He has two prior convictions for DWI. We've proven that as well.

Defense: Your Honor, I'm going to object to that argument. The Court has instructed the jury that they're only to consider those to which he's stipulated, not to the—

Court: Sustained.

Defense: I would ask the jury be instructed to disregard the State's argument.

Court: The jury is instructed to disregard the last statement of the prosecutor.

Defense: Move for a mistrial, Your Honor.

Court: Denied. Go ahead.

Lewis argues in his sole issue that the court abused its discretion by denying his motion for mistrial because the reference by the prosecutor to his prior convictions was an impermissible argument that the jury should find him guilty because of his prior convictions.

The State responds that no error is shown because Lewis's motion for mistrial was untimely and the court's prompt instruction cured any prejudicial effect arising from the argument.

---

1. Tamez v. State, 11 S.W.3d 198 (Tex.Crim. App.2000).

## Preservation

■■■ Rule of Appellate Procedure 33.1(a)(1) requires "a timely request, objection, or motion" to preserve a complaint for appellate review. "There are two main purposes behind requiring a timely, specific objection: 1) to inform the judge of the basis of the objection and give him the chance to make a ruling on it, and 2) to give opposing counsel the chance to remove the objection." *Garza v. State*, 126 S.W.3d 79, 82 (Tex.Crim.App.2004). Like an untimely objection, an untimely motion for mistrial will not preserve a complaint for appellate review. *Young v. State*, 137 S.W.3d 65, 70 (Tex.Crim.App.2004).

The preservation requirements of Rule 33.1 are not to be applied in a hypertechnical manner.

> The standards of procedural default, therefore, are not to be implemented by splitting hairs in the appellate courts. As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.

*Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App.1992); *accord Allman v. State*, 164 S.W.3d 717, 720 (Tex.App.-Austin 2005, no pet.); *Kirksey v. State*, 132 S.W.3d 49, 54 (Tex.App.-Beaumont 2004, no pet.); *Simmons v. State*, 100 S.W.3d 484, 493 (Tex.App.-Texarkana 2003, pet. ref'd).

There is a 1993 decision from the Fort Worth Court which supports the State's contention that Lewis has failed to preserve his complaint for appellate review. *See Parks v. State*, 858 S.W.2d 623, 631 (Tex.App.-Fort Worth 1993, pet. ref'd) (finding objection to argument untimely because it was made eight sentences after the first objectionable statement was made). Nevertheless, we decline to follow *Parks* because we believe it is distinguishable on its facts and, more importantly, because we believe it to be inconsistent with a proper implementation of the policies for preservation as explained by the Court of Criminal Appeals in *Lankston.*

Here, only two further sentences were uttered by the prosecutor before Lewis objected and then asked for a mistrial. Thus, the facts of Lewis's case are distinguishable from the facts presented in *Parks.*

More importantly however, the court in *Parks* appears to have engaged in the kind of hair-splitting denounced by the Court of Criminal Appeals in *Lankston.* The Court of Criminal Appeals' more recent decisions addressing preservation appear to remain faithful to the ideals expressed in *Lankston. See, e.g., Garza*, 126 S.W.3d at 84–85 (appellate complaint preserved even though trial objection not raised "at the earliest opportunity"). Thus, we decline to take the hypertechnical approach advocated by the State in determining whether Lewis timely preserved his complaint.

Lewis urged his objection and motion for mistrial only moments after the complained-of argument was made and "at a time when the trial court [wa]s in a proper position to do something about it." *See Lankston*, 827 S.W.2d at 909; *Kirksey*, 132 S.W.3d at 54; *see also Garza*, 126 S.W.3d at 82. Accordingly, we hold that he adequately preserved his complaint for appellate review.

## Denial of Mistrial

■■■ The denial of a motion for mistrial, appropriate for "highly prejudicial and incurable errors," is reviewed under an abuse of discretion standard. *See Simpson v. State*, 119 S.W.3d 262, 272

(Tex.Crim.App.2003) (quoting *Wood v. State,* 18 S.W.3d 642, 648 (Tex.Crim.App. 2000)); *Perez v. State,* 187 S.W.3d 110, 112 (Tex.App.-Waco 2006, no pet. h.).

> [T]he question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis. A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." In effect, the trial court conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone. Of course, the harm analysis is conducted in light of the trial court's curative instruction. Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.

*Hawkins v. State,* 135 S.W.3d 72, 77 (Tex. Crim.App.2004) (footnotes omitted).

■ Thus, the appropriate test for evaluating whether the trial court abused its discretion in overruling a motion for mistrial is a tailored version of the test originally set out in *Mosley v. State,* 983 S.W.2d 249, 259–60 (Tex.Crim.App.1998), a harm analysis case. *See Hawkins,* 135 S.W.3d at 77; *Perez,* 187 S.W.3d at 112–13. The *Mosley* factors that we consider in determining whether the trial court abused its discretion in denying a mistrial are: (1) the severity of the misconduct (the magnitude of the prejudicial effect); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct. *Mosley,* 983 S.W.2d at 259; *Perez,* 187 S.W.3d at 113.

When a *Tamez* stipulation has been made, the stipulation is admissible in evidence and is "the legitimate subject of voir dire, opening statements, *and closing arguments.*" *Hollen v. State,* 117 S.W.3d 798, 802 (Tex.Crim.App.2003) (emphasis added). However, the State may not argue that the jury should find the defendant guilty of the present DWI charge because of the prior convictions to which he has stipulated. *See Melton v. State,* 713 S.W.2d 107, 114 (Tex.Crim.App.1986) (impermissible to argue that a defendant should be found guilty because of extraneous offenses); *Sanchez v. State,* 591 S.W.2d 500, 502 (Tex.Crim.App. [Panel Op.] 1979) ("the State may not argue to the jury that the prior convictions are evidence of the defendant's guilt"); *Miranda v. State,* 813 S.W.2d 724, 741 (Tex. App.-San Antonio 1991, pet. ref'd); *see also Hollen,* 117 S.W.3d at 803 (Holcomb, J., concurring) (fact that stipulation may be mentioned in closing argument "does not mean the State can refer to the proof in an inappropriate context, such as suggesting that the jury should find the defendant guilty of the current charge of DWI because he was already found twice guilty of a similar offense, or that the jury should take the prior convictions into account when considering whether there is a reasonable doubt the defendant was intoxicated on the date in question while operating a motor vehicle").

■ When we consider issues relating to allegedly improper jury argument, the argument must be examined in light of the entire record and not in isolation. *See Swarb v. State,* 125 S.W.3d 672, 685 (Tex. App.-Houston [1st Dist.] 2003, pet. dism'd); *Miranda,* 813 S.W.2d at 740; *Crossman v. State,* 797 S.W.2d 321, 325–26 (Tex.App.-Corpus Christi 1990, no pet.); *see also Hawkins,* 135 S.W.3d at 80.

Here, the primary focus of the State's closing argument was on the issue of intoxication. Near the conclusion of the argument, the prosecutor summarized the evidence which he contended was probative of intoxication, then added, "And then there's the stipulation in evidence. This isn't his

first time, it's his third time." Lewis contends that this argument impermissibly urged the jury to find him guilty because of his two prior convictions.

However, the State looks to the remainder of the argument—"He has two prior convictions for DWI. We've proven that as well."—and argues that, in context, the prosecutor was concluding the argument by reminding the jurors that the "prior convictions element" of the felony DWI had been established by the stipulation. Although this is a close case, we agree with the State's assertion.

When the complained-of argument is read in context, we cannot say that the argument was a flagrant effort on the part of the prosecutor to urge the jury to convict Lewis because of his prior convictions rather than because of the evidence of intoxication offered at trial. *Cf. Soto v. State,* 810 S.W.2d 861, 864 (Tex.App.-Fort Worth 1991, pet. ref'd) (argument not improper because "[t]he prosecutor did not directly argue to the jury that Soto was a drug dealer"); *Crossman,* 797 S.W.2d at 326 ("A complete and careful reading of the State's closing argument does not indicate that the State argued outside the limitations in the charge that the extraneous offenses were only to be considered to show the lust of appellant for L.").

■■■ Ordinarily, a prompt instruction to disregard will cure the prejudicial effect of allegedly improper prosecutorial argument. *See Wesbrook v. State,* 29 S.W.3d 103, 115 (Tex.Crim.App.2000); *Harris v. State,* 122 S.W.3d 871, 886–87 (Tex.App.-Fort Worth 2003, pet. ref'd); *Gonzalez v. State,* 115 S.W.3d 278, 284 (Tex.App.-Corpus Christi 2003, pet. ref'd). In a similar context, it has been held that a prompt instruction to disregard can cure the prejudicial effect arising from the improper admission of evidence of extraneous offenses. *See Ovalle v. State,* 13 S.W.3d

774, 783 (Tex.Crim.App.2000); *Hackett v. State,* 160 S.W.3d 588, 592 (Tex.App.-Waco 2005, pet. ref'd). Thus, a prompt instruction to disregard will ordinarily cure the prejudicial effect of prosecutorial argument which makes an improper reference to an extraneous offense. *See Lemmons v. State,* 75 S.W.3d 513, 527–28 (Tex.App.-San Antonio 2002, pet. ref'd); *Soto,* 810 S.W.2d at 864.

Here, the trial court promptly and clearly instructed the jury to disregard the complained-of argument. We presume the jury followed this instruction. *See Wesbrook,* 29 S.W.3d at 116; *Perez,* 187 S.W.3d at 112–13; *Drake v. State,* 123 S.W.3d 596, 604 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd); *West v. State,* 121 S.W.3d 95, 107 (Tex.App.-Fort Worth 2003, pet. ref'd).

■■■ Finally, we examine the certainty of conviction absent the misconduct. The only disputed issue at trial was whether Lewis was intoxicated on the date in question. After reviewing the record, we cannot characterize the evidence of intoxication as overwhelming. In fact the arresting officer agreed that Lewis was not "falling down drunk." Nevertheless, there is ample evidence in the record from which it could be determined that Lewis was intoxicated.

Wichita Falls Police Officer Henry Saenz decided to stop Lewis's convertible just after midnight when he saw it traveling in the opposite direction at a high rate of speed. Saenz turned around to follow. Saenz paced Lewis's car and determined it was traveling about 60 miles per hour in a location where the posted speed limit was 40. Lewis was driving at this rate of speed with the top down and his two-year old son in a carseat, on a late-November night which Saenz characterized as "cool."

Saenz found Lewis to have bloodshot eyes and a strong odor of an alcoholic beverage on his breath. The State offered in evidence an in-car video recording made by a camera in a back-up officer's patrol car. This recording began as Saenz had Lewis walk to an area beside the road to perform field sobriety tests. Saenz asked Lewis to perform the walk-and-turn test, wherein Lewis was to walk along an imaginary line touching his heel to his toes with each step. Lewis had some difficulty standing in the starting position (heel-to-toe) as Saenz gave the instructions. When he began the test, he stepped off the imaginary line on his initial step. Saenz also testified that Lewis failed to walk in a heel-toe fashion as directed.

After the walk-and-turn test, Saenz asked Lewis to submit a breath specimen for a portable breath testing instrument. A back-up officer, Charles Mauck, performed this test. He directed Lewis to blow into a small tube in a manner similar to inflating a balloon. Lewis had difficulty providing an adequate breath specimen. Mauck decided that Lewis had something in his mouth because he found a residue in the specimen tube. He directed Lewis to clear his mouth. However, Lewis was unable to provide an adequate specimen. Mauck attributed this to a lack of cooperation on Lewis's part.

A video recording was made at the Wichita County Jail as well. Here, Lewis did not appear to sway as he stood in the intoxilyzer room. Without prompting, Lewis stood, stated his name, and complained that the officers had not read his rights to him. He stated that he had already taken three breath tests which demonstrated that he was not intoxicated and he walked the line at the jail to demonstrate his sobriety.

The intoxilyzer operator, Officer Mason Wiese, then read Lewis's rights and the required statutory warnings to him. Lewis responded that he had already taken a breath test and would not submit to another. He also said that he would not perform any sobriety tests he had already done. Wiese conducted the horizontal gaze nystagmus test and found six of a possible six clues indicating intoxication. Wiese then had Lewis perform the one-leg-stand test, wherein Lewis was to stand with one foot about six inches off the ground and count to twenty. Lewis swayed slightly, but he was able to perform this test with each foot. Wiese critiqued his performance by saying that he did not hold the extended foot as high as he was supposed to. It is difficult to determine this aspect of Lewis's compliance from the video.

Although the evidence of intoxication may not be characterized as overwhelming, the record does contain ample evidence from which the jury could determine that Lewis was intoxicated. The fact that Lewis was driving his two-year-old son in his convertible at a high rate of speed with the top down on a "cool" night is somewhat indicative of a loss of normal mental faculties. Lewis's performance on the walk-and-turn test and the one-leg-stand test provides some indication of impairment. The results of the horizontal gaze nystagmus test are indicative of intoxication. The odor of an alcoholic beverage on Lewis's breath and his bloodshot eyes are indicators of intoxication. And finally, Lewis's refusal to provide a breath specimen for the intoxilyzer at the county jail may be considered as evidence of intoxication. *See* TEX. TRANSP. CODE ANN. § 724.061 (Vernon 1999); *Smith v. State*, 8 S.W.3d 450, 451 (Tex.App.-Waco 1999, no pet.).

Returning to the *Mosley* factors, the complained-of argument does not appear to have been made in a flagrant attempt to prejudice the jury, we presume that the

jury complied with the court's prompt instruction to disregard, and it is reasonably certain that the jury would have convicted Lewis regardless of the challenged argument in light of the evidence presented. Therefore, we cannot say that the court abused its discretion by denying Lewis's motion for mistrial. Accordingly, we overrule Lewis's sole issue and affirm the judgment.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice, concurring.

The majority expressly acknowledges but refuses to follow precedent from the court of appeals from which this transferred case was received. For the reasons expressed in my dissenting opinion in *Jaubert v. State*, which, incidentally, was also a case transferred to us by a docket equalization order from the same court of appeals, I would apply the transferring court's precedent. *See Jaubert v. State*, 65 S.W.3d 73, 91 n. 1 (Tex.App.-Waco 2000) (Gray, J., dissenting), *rev'd on other grounds*, 74 S.W.3d 1 (Tex.Crim.App.2002). *See also* Andrew T. Solomon, *A Simple Prescription for Texas's Ailing Court System: Stronger Stare Decisis*, 37 ST. MARY'S L.J. 417, 463 (2006) ("The unfairness occurs when the appellate court receiving the transferred case ignores the binding precedent from the trial court's 'home' appellate district after the trial court applied the rules of geographic vertical stare decisis and correctly followed the binding precedents from the two Texas high courts and that trial court's 'home' appellate district.").

Additionally, I see absolutely no need to berate another court of appeals for its analysis in a case in which the petition for review was refused. And there is certainly nothing improper about the State arguing that we should rely upon it. If the case can be distinguished, as the majority

contends, then distinguish it and go on, but there is no need to "denounce" their decision. The fact that it is distinguishable highlights that the criticism of the case by the majority is merely irrelevant verbiage on an otherwise straightforward issue.

The remainder of the opinion is an unremarkable application of the *Hawkins* and *Perez* holdings. *See Hawkins v. State*, 135 S.W.3d 72 (Tex.Crim.App.2004); *Perez v. State*, 187 S.W.3d 110 (Tex.App.-Waco 2006, no pet. h.). I concur in the judgment.