

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-022-CR

JOSEPH CLIFTON CHARLES          APPELLANT

V.

THE STATE OF TEXAS          STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

This case arises from a drug deal gone wrong. Appellant Joseph Clifton Charles appeals his conviction for attempted capital murder. He contends in two points that the trial court erred by overruling his objections to the State's impermissible closing jury arguments. We affirm.

### II. Factual and Procedural Background

---

[1] *See* Tex. R. App. P. 47.4.

Appellant first met Terrance Riley when Appellant and his brother, Ronald Trahan, Jr.,[2] were at Hard Body's, a gentleman's club, in Arlington, Texas, in May or June of 2006. Appellant and Trahan approached Riley about whether Riley could sell them marijuana after they noticed that Riley had a "blunt" behind his ear. After Riley sold half an ounce of marihuana to Appellant and Trahan, the three men exchanged names and phone numbers.

After meeting at Hard Body's, Riley met with Appellant and Trahan on several occasions over the next several weeks. Approximately a week after their initial meeting, Riley sold Trahan some additional marihuana. Shortly after that, Trahan went to Riley's apartment to smoke marihuana and play video games. Next, Appellant went to Riley's duplex[3] so Riley could cut Appellant's hair. On another occasion, Appellant and Trahan set up a drug deal and drove Riley to buy approximately half a pound of marihuana.

On July 25, 2006, Appellant went to Riley's duplex to sell him more marihuana. Riley had previously spoken on the phone with Trahan, who stated that he could provide Riley with a better quality of marihuana in exchange for Riley's paying a higher price for it. When Appellant went inside the duplex, he gave the marihuana to Riley, who after investigating it, determined that it was dried up and

---

[2] Riley knew Appellant as "Joe" and Trahan as "100." Riley testified that he later learned that Trahan went by the name "R.J."

[3] Riley moved from his apartment to a duplex a couple of days after Trahan went to Riley's apartment.

moldy, not the quality that Trahan had said it would be, and therefore not worth the $275 that he had agreed to pay for it. After Riley told Appellant that the marihuana was bad and that it was not what he was expecting, Appellant pulled out a gun and shot Riley. Riley then slid off the couch and onto the floor and closed his eyes. When he opened his eyes again, he saw Appellant leaving the duplex. Riley then began hollering and pushed himself across the floor to his cell phone and called 911. Riley is now a paraplegic, and the doctors do not expect him to walk again.

Appellant was indicted for the offenses of attempted capital murder in count one, aggravated robbery in count two, and aggravated assault with a deadly weapon in count three.[4] Appellant pleaded not guilty to all three offenses and was tried in January 2009. On January 14, 2009, a jury found Appellant guilty of the offense of attempted capital murder, found the allegations in the Repeat Offender Notice and Habitual Count Paragraphs One and Two of the indictment to be true, and assessed Appellant's punishment at seventy years' confinement. This appeal followed.

### III. Discussion

In two points, Appellant contends that the trial court erred by overruling his objections to two improper comments made by the prosecutor during closing arguments in the guilt-innocence phase of trial. Appellant argues that the

---

[4] This was the second time that Appellant was tried under this indictment. On February 25, 2008, the State, after waiving count one (attempted capital murder) and count three (aggravated assault with a deadly weapon), proceeded to trial on count two (aggravated robbery). However, the trial court granted Appellant's motion for mistrial after the jury could not reach a unanimous verdict.

prosecutor's comments bolstered the State's evidence and improperly shifted the burden of proof to the defense.

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

Appellant complains of the following statements made by the State during its closing argument:

> [State]: Defense counsel says, "Why didn't they bring your records?" If there were records on this defendant's cell phone that showed otherwise, you'd know they would bring it to you. It's his phone.
>
> [Appellant]: Your Honor, it changes the burden of proof from the State to the Defense.
>
> The Court: Overruled.
>
> [State]: They have absolutely no burden, but don't you know that if that was true, they could have brought it to you.
>
> Defense counsel said, "Well, they didn't bring you word from the street." His entire family is sitting right there. Everybody who knows him and loves him is sitting right over there.
>
> Did a single one of them ever get up here to tell you, "He's not capable of committing this crime; I know Joe; he has nothing to do with firearms; I love him; wouldn't hurt a flea; wouldn't be involved in something like this?"

There's his mother. His own brother couldn't say anything good about him nor his sisters nor anybody else. That speaks volumes to who you're dealing with.

Do you want to know Joseph Charles? Their absence tells you who you have.

And for her to sit there and tell you we didn't bring you word on the street and the family came and supported him but couldn't be bothered to say one good thing—

[Appellant]: Your Honor, I'm going to object again to shifting the burden of proof to the defendant.

The Court: Overruled.

Regarding the first objection, Appellant complains that the State's comment alleging that Appellant did not offer into evidence Appellant's phone records erroneously shifted the burden of proof to Appellant.

During his closing arguments, Appellant had specifically referenced the State's failure to present evidence regarding Appellant's phone records at trial. Appellant's counsel had stated in relevant part,

> The State of Texas'[s] case comes down to one witness and only one witness. They didn't bring you DNA. They didn't bring you prints. They didn't bring you phone records from Tameika Trahan. They didn't bring you phone records from Terrance Riley. *They didn't bring you phone records from my client.* [Emphasis added.]

It is apparent that the State was simply trying to respond to Appellant's argument that the State did not produce his phone records at trial and emphasize that Appellant could have provided his own phone records. Absent comment on the defendant's lack of testimony, "the State may comment on appellant's failure to

5

present evidence in his favor" during jury argument. *See Caron v. State,* 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000)); *Sanders v. State*, 74 S.W.3d 171, 173 (Tex. App.—Texarkana 2002, pet. ref'd).

Here, the State simply stated that Appellant could have brought in his own phone records as evidence if the records had been favorable to his defense. We hold that the trial court did not abuse its discretion by overruling his objection to the State's comments because the State was merely responding to Appellant's closing argument and suggesting that Appellant had access to his own phone records and could have provided them as evidence. We overrule Appellant's first point.

Concerning the second objection, Appellant argues that the State commented on his failure to call defense witnesses and that the argument shifted the burden of proof to him.

An objection to a jury argument at trial must be timely and specific, and the defendant must pursue the objection to an adverse ruling. *Mathis v. State,* 67 S.W.3d 918, 927 (Tex. Crim. App. 2002); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1173 (1997); *Carter v. State*, 614 S.W.2d 821, 823 (Tex. Crim. App. 1981); *see also* Tex. R. App. P. 33.1(a)(1). An objection is timely if it is made as soon as the ground of objection becomes apparent. *Thompson v. State,* 691 S.W.2d 627, 634 (Tex. Crim. App. 1984), *cert. denied*, 474 U.S. 865 (1985).

6

Here, Appellant should have objected to the prosecutor's statements when it first became apparent that the State was referencing Appellant's failure to call family members to testify. *See id.*; *Parks v. State*, 858 S.W.2d 623, 631 (Tex. App.—Fort Worth 1993, pet. ref'd). Appellant, however, waited until the State had commented generally that his family members, and specifically his mother and brother, did not testify before he objected to the statements as shifting the burden of proof. Because Appellant did not timely object to the prosecutor's statements, he failed to properly preserve error for our review. *See* Tex. R. Evid. 103(a)(1); *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997); *Polk v. State*, 729 S.W.2d 749, 753 (Tex. Crim. App. 1987). Additionally, it is evident from the record that the State was again responding to the argument by Appellant's counsel that the State "didn't bring you word on the street," which is logically interpreted to mean Appellant's reputation in his neighborhood and community, because the prosecutor prefaced his remarks by stating, "Defense counsel said, 'Well, they didn't bring you word from the street.'" His entire family is sitting right there. . . ." Accordingly, we overrule Appellant's second point.

## IV. Conclusion

Having overruled each of Appellant's two points, we affirm the trial court's judgment.

7

ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 17, 2010

8