In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00022-CR


______________________________




ALLAN RAY HAGGERTY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Sixth Judicial District Court


Lamar County, Texas


Trial Court No. 20559




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 During its rebuttal closing jury argument in the trial of Allan Ray Haggerty for driving while
intoxicated, third offense, the State argued the following:

 What kind of community do you want to live in? . . . I prosecuted cases for eight
years in Tarrant County before I came here . . . . I would love to tell you that I will
never speak to another grieving widow, mother of a child . . . that has been the victim
of a drunk driver. I would love to. But that's not going to happen.


And, responding to Haggerty's closing argument that no evidence showed Haggerty swerved his
vehicle or demonstrated his lack of control of the vehicle, (1)
 the State then argued the following:

 Thank God that this guy did not do that. Because had he done so, . . . not only would
he have endangered more lives but chances were y'all would have seen a mother up
here talking about the last time she saw her child.


 

Haggerty's objections to both of the above arguments were overruled by the trial court. The jury
found Haggerty guilty, and the trial court, on Haggerty's election, assessed punishment at six years'
confinement. In two points of error, Haggerty asserts that the State was improperly allowed to make
inflammatory jury arguments that conjured up images of imaginary victims. We affirm the judgment
of the trial court because (1) the "what kind of community" argument was not improper, and (2) the
"endangered more lives" argument was not harmful.

(1) The "What Kind of Community" Argument Was Not Improper

 There are four proper areas of jury argument: (1) summation of the evidence presented at
trial; (2) reasonable deduction drawn from that evidence; (3) answer to the opposing counsel's
argument; or (4) a plea for law enforcement. Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App.
2000). The State "is clearly prohibited from making reference during final argument to extraneous
offenses for which the accused is not currently on trial." Borjan v. State, 787 S.W.2d 53, 57 (Tex.
Crim. App. 1990). Moreover, the State may not make jury argument "that would lead the jury to
speculate on extraneous offenses or other matters that are not in evidence." Monkhouse v. State, 861
S.W.2d 473, 478 (Tex. App.--Texarkana 1993, no pet.).

 In his first point of error, Haggerty asserts that the State's "what kind of community"
argument was improper in that it attributed to Haggerty hypothetical victims and imaginary and
extraneous crimes. (2)

 We do not see, and Haggerty fails to explain, how the challenged argument attributes any
extraneous victims or crimes to Haggerty. The State's argument certainly asks the jury to consider
images of victims of DWI, but that in itself is not objectionable. A proper plea for law enforcement
permits the State to argue the impact and effect of the jury's verdict on the community. See Borjan,
787 S.W.2d at 55-56. This may include, generally, invocation of victims of this type of crime. See
id. at 57-58. The language used here references the State's experience with the impact of these
crimes in the most general terms. (3) We fail to see where the State implicates Haggerty's culpability
for these community victims' grief. The point of error is overruled. 



(2) The "Endangered More Lives" Argument Was Not Harmful

 Haggerty's second point of error challenges the other argument, what we are calling the
"endangered more lives" argument.

 The State contends that, in context, the second argument was a proper answer to Haggerty's
closing argument. We disagree with this conclusion. While Haggerty's counsel argued that Haggerty
had not exhibited various indicators of intoxication, that argument stayed entirely within the bounds
of the evidence in the record. The State's reply--that, if Haggerty had swerved, or done other acts
that would indicate intoxication, Haggerty would have endangered others and possibly killed a
child--goes, by its own terms, outside the record. When defense counsel's argument is not outside
the record, the State may not go outside the record in reply. See Walker v. State, 664 S.W.2d 338,
340-41 (Tex. Crim. App. 1984). Thus, the State's argument was not permissible as an answer to
opposing counsel's argument.

 We are left to consider whether the argument impermissibly attributed extraneous crimes to
Haggerty or was a permissible plea for law enforcement. The State notes in its brief that it did not
"expressly accuse Appellant of having killed anyone . . . ." We agree that this complained-of portion
of argument, like the first complained-of argument, does not attribute the deaths of the hypothetical
children to Haggerty. For the reasons given earlier, the State committed no error in invoking future
imaginary victims as a plea to the jury to enforce the crime of DWI. 

 However, in this second portion of argument, the State did not merely urge conviction in
order to deter this type of crime. The State also argued that Haggerty could have "endangered more
lives," although the record contained no facts of Haggerty having endangered anyone. (4) 

 During the guilt/innocence phase of trial, the State may not try to persuade the jury that this
defendant is responsible for more than just the offense alleged in the instant indictment and to
convict him or her on that basis. Borjan, 787 S.W.2d at 56-57; Melton v. State, 713 S.W.2d 107,
114 (Tex. Crim. App. 1986); Lewis v. State, 191 S.W.3d 335, 339 (Tex. App.--Waco 2006, pet.
ref'd). During the State's argument, the reference to endangering "more lives" raised the inference,
and invited the jury to speculate, that there was at least some life endangered by Haggerty on the
night in question or at other times about which the jury had simply not heard evidence. Accordingly,
the State's argument was improper, and overruling the objection thereto was error.

 Having determined that the State's comment was not permissible argument, we must
determine whether the error warrants reversal. See Mosley v. State, 983 S.W.2d 249, 259 (Tex.
Crim. App. 1998) (op. on reh'g). Improper jury argument is generally error of nonconstitutional
dimension. Martinez v. State, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000); Mosley, 983 S.W.2d at
259. The parties agree that the nonconstitutional harm analysis applies here, in which the error must
be disregarded if it does not "affect the defendant's substantial rights." See Tex. R. App. P. 44.2(b);
Hall v. State, 13 S.W.3d 115, 119 (Tex. App.--Fort Worth 2000, pet. ref'd); Coggeshall v. State, 961
S.W.2d 639, 643 (Tex. App.--Fort Worth 1998, pet. ref'd) (en banc). An error affects a substantial
right of the defendant when the error has a substantial and injurious effect or influence in
determining the jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A
criminal conviction will not be reversed for nonconstitutional error if the appellate court, after
examining the record as a whole, "has fair assurance that the error did not influence the jury, or had
but a slight effect." Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); see also Tex.
R. App. P. 44.2(b); Mosley, 983 S.W.2d at 260. 

 In our Rule 44.2(b) harm analysis from improper jury argument, we weigh three factors in
determining the harm to a defendant's substantial rights: (1) severity of the misconduct (the
magnitude of the prejudicial effect of the State's remarks); (2) curative measures taken (the efficacy
of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct
(strength of evidence supporting conviction). Mosley, 983 S.W.2d at 259 (citing United States v.
Millar, 79 F.3d 338, 343 (2nd Cir. 1996), and United States v. Palmer, 37 F.3d 1080, 1085 (5th Cir.
1994)). 

 Looking at the first of these three factors, we find that the State's reference to endangering
"more lives," in the context of the full argument and this trial, was only mildly prejudicial. See
Mosley, 983 S.W.2d at 260 (finding an indirect accusation to be mild prejudice, but implying that
injecting new facts would be highly prejudicial). The improper argument was a very small section
(only three words) of the larger closing argument, most of which made a proper plea for law
enforcement in general (though arguably inflammatory) terms. While the State alluded to Haggerty's
extraneous bad acts, the accusation of endangerment of others was indirect and not elaborated on.

 Moreover, the State, on defense counsel's objection that "none of this has occurred," replied,
in front of the jury, that that was "exactly the point." In other words, though the State did err in its
choice of three words ("endangered more lives"), the prosecutor immediately told the jury of an
apparent intent to speak in hypothetical terms. This renders the improper argument less harmful. 
See Martinez, 17 S.W.3d at 693; see also Hawkins v. State, 135 S.W.3d 72, 84 (Tex. Crim. App.
2004) ("Although a prosecutor's self-corrective action might not carry the same weight as a trial
court's instruction to disregard, it is nevertheless a relevant consideration in determining harm and
can, in the appropriate circumstances, render an improper comment harmless."). "To the extent that
the prosecutor conveyed facts outside the record, such facts had no tendency to adversely influence
the jury against appellant beyond the influence exerted by a wholly legitimate plea for law
enforcement." Martinez, 17 S.W.3d at 693. Thus, the slight degree of prejudice under this first
factor favors a finding of harmless error.

 We find that the second factor in the harm analysis weighs slightly in Haggerty's favor. The
trial court made no effort to cure the error; indeed, the court overruled Haggerty's objection, after
which the State re-emphasized the argument. A trial court magnifies the possibility for harm when
it overrules an objection to an improper argument, thus putting "the stamp of judicial approval" on
the improper argument. Good v. State, 723 S.W.2d 734, 738 (Tex. Crim. App. 1986). Yet the
State's clarification, in front of the jury, of its apparent intent to speak hypothetically, though not
eliminating the error, minimizes the harm of the error. See Hawkins, 135 S.W.3d at 84.

 The final factor requires that we consider the error in light of the strength of the evidence in
support of the conviction (or, the certainty of conviction absent the misconduct). Haggerty's defense
tactic was to dispute that he had been intoxicated. 

 The State presented two state troopers as witnesses. The arresting officer, Trooper Greg
Wilson, testified that, after pulling Haggerty over for speeding, he smelled alcohol on Haggerty's
breath and noticed that Haggerty's eyes were red and watery. Wilson testified that a portable breath
test administered at the scene indicated the presence of alcohol in Haggerty's system. Wilson also
testified that Haggerty exhibited HGN at maximum deviation in a field sobriety test. Wilson
testified that he believed Haggerty exhibited loss of normal mental and physical faculties due to his
repeated failure to follow directions on three separate field sobriety tests. Wilson testified that, in
his opinion, Haggerty was intoxicated. Through Wilson, the State published to the jury the in-car
videotape of the field sobriety tests and arrest and a videotape showing the jury what HGN looks
like. 

 The State also presented Trooper Patrick Heintz as an expert witness on the reliability and
indications of field sobriety tests. Heintz testified to the accuracy of the HGN test, and the likelihood
of Haggerty's intoxication given the facts in evidence. Heintz gave his opinion that, based on
Wilson's report, his viewing of the in-car videotape, and his prior knowledge of Haggerty, that
Haggerty was intoxicated. Finally, we note that the jury could have considered as evidence
Haggerty's refusal to submit to a formal breath test. 

 The defense rested without putting on any witnesses. Nonetheless, we recognize that Wilson
testified that Haggerty denied the use of alcohol. Wilson also admitted that Haggerty had pulled over
promptly and been polite and compliant. Finally, we note that, while the officers testified to the
possibility of intoxication from Haggerty's failure to fully follow directions on the field sobriety tests,
neither officer expressly stated that Haggerty had failed either the walk-and-turn or the one-leg-stand
field sobriety tests.

 We find that, though not guaranteeing conviction, the State's evidence in support of
conviction was strong. Thus, the strength of the evidence in support of conviction, notwithstanding
the State's improper argument, weighs in the State's favor on the third factor.

 After examining the record as a whole, we find that there is fair assurance that the State's
improper jury argument did not influence the jury, or had but a slight effect. The error was harmless,
and the point of error is overruled.





 We affirm the judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: December 4, 2006

Date Decided: February 9, 2007


Do Not Publish
1. In the opening portion of its closing argument, the State made the assertion that the
horizontal gaze nystagmus (HGN) field sobriety test starts the presumption of Haggerty's intoxication
at eighty-eight percent, to which the jury should add various percentages for the other evidence of
intoxication offered at trial. The State concluded it met the reasonable doubt standard, since when
the jury "[p]ut all these together, look at our percentages we talked about earlier, looks like a good
100 percent doesn't it?" 

 In response, Haggerty's closing argument began by assailing the State's assessment that
Haggerty was 100 percent guilty of intoxication. Defense counsel suggested to the jury that it
subtract percentages for evidence of sobriety adduced in the evidence, including the fact that
Haggerty pulled over properly and did not swerve while driving. Defense counsel concluded that
the  State's  position  "is  some  arbitrary  number  that  they  presented  in  front  of  you  as  proof
of Mr. Haggerty's guilt." The defense then encouraged the jury to view the in-car videotape of the
traffic stop, field sobriety tests, and arrest, and note that Haggerty did not appear intoxicated. 
Defense counsel stated, "If you need to watch it 100 times, watch it 100 times. Nitpick everything.
He did an excellent job. Okay. He did everything that the trooper asked him to do . . . . Use your
common sense. View the tape. View the evidence you have in front of you. This man was not
intoxicated that night." 

2. Haggerty does not claim error in other inferences from the complained-of argument, e.g.,
that, if not found guilty, Haggerty would again drive while intoxicated, or that Haggerty is an
alcoholic who will again drive intoxicated. While Haggerty cites cases to this Court reversing
convictions for improper arguments raising those implications, he does not actually claim that the
State made those inferences in this case. If a point of error is inadequately briefed, we will not
address it. Vuong v. State, 830 S.W.2d 929 (Tex. Crim. App. 1992). We will not brief a defendant's
case for him. Heiselbetz v. State, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995). We thus look only
to whether: (a) the State's argument did attribute to Haggerty hypothetical victims and imaginary
and extraneous crimes; and (b) such attribution is improper jury argument.
3. We note that Haggerty does not complain that the State testified to facts outside the record
in regard to his own career arc.
4. The record shows that the closest testimony to endangerment comes from the State's
examination of two state troopers who both testified that Haggerty's speed was unsafe. The arresting
officer was asked if speeding on a wet road was dangerous, but replied that danger would depend
on the condition of the tires and the ability to drive. The prosecutor stopped short of eliciting
testimony that Haggerty's driving was itself dangerous or that Haggerty had endangered anyone.