IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00426-CR

 

Jeremy D. Gibson,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 278th District Court

Madison County, Texas

Trial Court No. 05-10943-278-02

 



O p i n i o n



 

            A Madison County jury found Appellant Jeremy
Gibson guilty of intoxication manslaughter (count 1) and intoxication assault
(count 2).[1]  The
jury assessed a nine-year prison sentence and a $6,000 fine on count 1 and a
two-year sentence and a $2,000 fine on count 2.  Raising four issues, Gibson
appeals.  We will affirm

Sufficiency of the Evidence

            Gibson’s first two issues assert that the evidence
is legally and factually insufficient to support the intoxication manslaughter
and intoxication assault convictions.  When
reviewing a challenge to the legal sufficiency of the evidence to establish the
elements of a penal offense, we must determine whether, after viewing all the
evidence in the light most favorable to the verdict, any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2789, 61 L.Ed.2d 560 (1979).  Our duty is to determine if the finding of the
trier of fact is rational by viewing all of the evidence admitted at trial in
the light most favorable to the verdict.  Adelman v. State, 828 S.W.2d
418, 422 (Tex. Crim. App. 1992).  In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict.  Curry v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000).

In a factual sufficiency review, we ask whether a
neutral review of all the evidence, though legally sufficient, demonstrates
either that the proof of guilt is so weak or that conflicting evidence is so
strong as to render the factfinder’s verdict clearly wrong and manifestly
unjust.  Watson v. State, 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  “The court reviews the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compares it with the
evidence that tends to disprove that fact.”  Johnson, 23 S.W.3d at 7
(quoting Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)). 
The appellate court “does not indulge in inferences or confine its view to
evidence favoring one side of the case.  Rather, it looks at all the evidence
on both sides and then makes a predominantly intuitive judgment. . . .”  Id. (quoting William Powers and Jack Ratliff, Another Look at “No Evidence” and
“Insufficient Evidence,” 69 Texas L. Rev. 515, 519 (1991)).  The nature
of a factual sufficiency review authorizes an appellate court, although to a
very limited degree, to act as the so-called “thirteenth juror” to review the
factfinder’s weighing of the evidence and disagree with the factfinder’s
determination.  Watson, 204 S.W.3d at 416-17.

Gibson specifically asserts that the evidence is
legally and factually insufficient on the element of his intoxication at the
time of the accident.  Gibson was
convicted under Penal Code sections 49.07 (intoxication assault) and 49.08
(intoxication manslaughter).  These statutes require the actor to have caused
serious bodily injury or death, by accident or mistake, by operating a motor
vehicle while intoxicated and by reason of that intoxication.  See Tex. Pen. Code Ann. §§ 49.07(a)(1),
49.08(a) (Vernon 2003).  “Intoxication,” as it pertains to this case, means “not
having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a
combination of two or more of those substances, or any other substance into the
body; . . . .”  Id. § 49.01(2)(A).

            Gibson was driving a vehicle on a
rural road (FM 1374) in Walker County.  The front seat passenger was Gibson’s
friend Marshall Phillips; the backseat passenger was Amber Brown, Gibson’s girlfriend
who was six-months’ pregnant.  As Gibson neared his home around 1:00 p.m. (the
responding DPS trooper received the dispatch on the accident around 1:20 p.m.),
he failed to negotiate a curve.  The vehicle became airborne, hit a tree, and
ended up overturned and on fire on the roadside.  Gibson did not suffer life-threatening
injuries, and Phillips suffered a broken leg.  Brown was thrown from the
vehicle; she suffered severe head injuries, and her unborn baby died en route
to the hospital.  Brown died soon after arriving at the hospital.

            Phillips testified that, in his
opinion, Gibson was not intoxicated at the time of the accident.  He said that
Gibson had stopped using drugs about thirty-six hours before the accident—on
the morning before the day of the accident, Gibson and Phillips had used
marihuana, cocaine, and methamphetamine.[2]  On
the day of the accident, they had gone from Huntsville to Lovelady and were on
their way back from Lovelady when the accident happened; Gibson pulled Phillips
from the wrecked vehicle.[3]  Phillips
did not notice any problems with Gibson’s driving, and he did not think that
Gibson was speeding; he was going sixty to seventy miles-per-hour, although Phillips
admitted that Gibson “could have been” going faster.  Phillips said that Gibson
was familiar with the road, having driven it many times.

            DPS trooper Steven Jeter responded to the
accident scene at 1:30 p.m., finding the vehicle on fire off the road and
Phillips and Brown lying near the wreck.  Gibson was on his knees holding
Brown’s head.  Gibson was in “shock and disarray” and told Jeter that he went
off the road and he was speeding.  In response to questioning about drug and
alcohol use, Gibson admitted to Jeter that he had smoked marihuana that
morning.  Jeter detected no alcohol odor on Gibson’s breath and could not
recall if Gibson’s speech was slurred.  Several syringes and a can of beer were
found at the accident scene.  Based on his observations at the accident scene
and his suspicion that Gibson was intoxicated, Jeter felt that a blood sample
should be taken from Gibson to determine any intoxication.  Jeter had another
trooper and a nurse take a blood sample from Gibson with his consent at 5:15
p.m. in a Houston hospital.[4]  Jeter
also did an accident reconstruction that revealed Gibson failed to take any
evasive action (braking or steering) to prevent the accident and that estimated
the vehicle to have been going approximately 91 m.p.h. at the time it left the
roadway.

            Eduardo Padilla, a DPS toxicologist/forensic
scientist, testified about Gibson’s blood sample analysis.  Two drugs in the
sample were diazepam and nordiazepam, commonly known as Valium and its
metabolite, and which are from the benzodiazepine class of drugs that are used
to treat anxiety and as sedatives.  The amount of diazepam was insufficient to
quantify, and the nordiazepam was .22 mg/liter.  Padilla explained that the
presence of those substances indicated that Gibson had taken Valium within
fifty to ninety hours of the time the sample was taken.  The level of nordiazepam
was within a prescribed therapeutic dosage, but impairing effects such as
drowsiness or dizziness were still possible because the intended effect of
Valium is to act as a depressant on the central nervous system.  Padilla said
that even a therapeutic level of Valium can affect a person’s motor skills and
judgment.  Xanax (or alprazolam), another benzodiazepine, was in Gibson’s blood
sample at a therapeutic level (.05 mg/liter), but it too acts as a depressant on
the central nervous system and affects a person’s motor skills and judgment;
its sedative properties can impair a person’s ability to drive by, for example,
slowing down response time.  A combination of Valium and Xanax causes an
additive or greater effect that could further impair a person’s ability to
operate a vehicle.  Finally, Padilla’s initial drug screen revealed the
possible presence of cocaine metabolite, but further analysis was not done because
the remaining sample amount was insufficient.  On cross-examination, Padilla
said that he was describing the effects of Valium and Xanax on the general
population and that their impairing effects on individuals can vary and are
only possible, not a certainty, in part because a person can build up a
tolerance to the drugs.

Cathy Erwin, another DPS forensic scientist, did
further analysis of Gibson’s blood sample, finding a positive for the presence
of completely metabolized cocaine, meaning that Gibson had probably used
cocaine within twenty-four hours, and possibly forty-eight hours, of the
sample’s taking.  She also found methamphetamine, a central nervous system stimulant,
in the amount of .33 mg/liter and opined that Gibson had taken it within seven
to fifteen hours.  A therapeutic level of methamphetamine, medically used for
obesity, narcolepsy, and attention deficit disorder, would be from .02 to .05
mg/liter for obesity or ADD.  Gibson had over six times the therapeutic level,
an amount found with drug abuse.  While methamphetamine is increasing and
reaching its peak in the blood, the effect is euphoric and leads to
overconfidence and affects judgment.  As the level decreases, people generally
become fatigued and extremely sleepy, which is accentuated by Valium, Xanax,
and marihuana.  Thus, Erwin said, methamphetamine users have impaired judgment
and motor skills “on the way up” and “on the way down.”  Typical driving
behaviors include wandering out of the lane, speeding, and driving off the
road.  Erwin reiterated a study’s conclusion that any use of methamphetamine is
likely to produce impairments that are inconsistent with safe driving.  On
cross-examination, Erwin admitted that she was describing the possible and
potential effects of the drugs on the general population and that she could not
say “a hundred percent” that Gibson was impaired; all she could say was that
the drugs were in his blood and that those drugs have impairing effects.

Ted Marulas, a defense accident reconstruction
expert, criticized Jeter’s accident reconstruction, claiming that Jeter’s
figures failed to take into account the road’s slope.  Marulas’s own
reconstruction showed the vehicle moving at a speed of 50 to 60 m.p.h. when it
left the road.  Gina Heineman, another defense witness and Gibson’s former
employer, testified that she met Gibson at 11:00 a.m. in Huntsville on the day
of the accident to give him his last paycheck.  Brown and Phillips were with
him.  She spoke with Gibson for five to ten minutes and was able to observe
him.  She said that Gibson appeared normal, and she did not notice slurring of
speech or difficulty in walking.

Gibson’s sufficiency points complain that there is
no direct evidence of Gibson’s intoxication—the loss of the normal use of mental
and physical faculties caused by his ingestions of drugs—at the time the
accident happened.  Gibson correctly asserts that no witness specifically testified
that Gibson “was intoxicated at the scene of the accident,” but he cites no
authority holding that the State was required to offer such evidence or that it
could not meet its burden of proof on intoxication with circumstantial
evidence.  See Smithhart v. State, 503 S.W.2d 283, 285 (Tex. Crim. App.
1974) (“The rule in driving while intoxicated cases is that in the
absence of direct (opinion) testimony, intoxication may be shown by
circumstantial evidence.”); Hernandez
Guerreo v. State, 773 S.W.2d 775, 776
(Tex. App.—Corpus Christi 1989, no pet.) (same); see also State v.
McClelland, 2006 WL 2692875, *2 (Tex. App.—Eastland Sept. 21, 2006, no pet.)
(not designated for publication) (same).
 Although there was no direct
or overwhelming evidence of intoxication at the time of the accident, there was
ample evidence from which a rational jury could conclude that Gibson was
intoxicated.  

Gibson told Jeter he had smoked marihuana that
morning.  His blood sample revealed the recent ingestion of Valium, Xanax,
cocaine, and methamphetamine.  The DPS forensic scientists testified how those
drugs impair motor skills and judgment.  While Phillips and Heineman
essentially testified that Gibson was not or did not appear to be intoxicated
at or near the time of the accident, the jury as trier of fact is the sole
judge of the credibility of the witnesses and the weight to be given the
testimony.  Cain v. State, 958 S.W.2d 404, 407-09 (Tex. Crim. App. 1997). 
It may “believe all, some, or none of
the testimony.”  Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App.
1991).  The jury can choose to
disbelieve a witness even when a witness’s testimony is uncontradicted.  Smith
v. State, 789 S.W.2d 419, 420 (Tex. App.—Houston [1st Dist.] 1990, pet.
ref’d).  Further, Jeter’s testimony about the circumstances of the accident
itself—Gibson’s missing a slight curve while going 91 m.p.h. on a road he was
familiar with—is indicative of a loss of normal mental faculties.  See Lewis
v. State, 191 S.W.3d 335, 341 (Tex. App.—Waco 2006, pet. ref’d).  Viewing
the evidence in the light most favorable to the verdict, we find that a
rational trier of fact could have found beyond a reasonable doubt the elements
of the offenses, including that Gibson was intoxicated at the time of the
accident from his ingestion of drugs.  Issue one is overruled.  See Jackson,
443 U.S. at 318-319, 99 S.Ct. at 2788-89.

Considering all of the evidence in a neutral
light, as we must in a factual sufficiency review, we find that the jury was
justified in finding Gibson guilty.  See Watson, 204 S.W.3d at
415.  The evidence does not demonstrate either that the proof of guilt is so weak
or that conflicting evidence is so strong as to render the jury’s verdict
clearly wrong and manifestly unjust.  See id. at 414-15.  We must defer
to the jury’s determination of the credibility of the witnesses, and we may not
ignore evidence that supports the jury’s verdict.  Johnson, 23 S.W.3d at
7; Cain, 958 S.W.2d at 407.  We overrule the second issue.

Mistrial

 

            Gibson’s third issue asserts that the trial court
erred in denying his motion for mistrial when Phillips appeared at trial in
jail clothing and handcuffs.  The State called Phillips as a hostile witness in
part to prove that Gibson was the driver and, with respect to the intoxication
assault count, to prove Phillips’s own serious bodily injury (his broken leg). 
Phillips entered the courtroom in an orange jail uniform with handcuffs
attached to a chain belt, and upon Gibson’s objection to Phillip’s appearance
as prejudicial, the jury was excused.

The prosecutor agreed with the removal of the
handcuffs, which the trial court ordered.  Gibson’s counsel stated that he did
not know Phillips would be brought in wearing jail clothing and handcuffs,
reiterated his prejudice objection, added a due process objection that Gibson
was being denied a fair trial, and moved for a mistrial. The prosecutor said
that he knew Phillips was in jail clothing but that he did not know Phillips
would be brought in with chained handcuffs.  After noting that Phillips was a
prosecution witness and that, if his clothing adversely affected his testimony,
it would adversely affect the State, the trial court overruled Gibson’s
objection.  Gibson then requested an instruction to disregard the handcuffs and
chains and again moved for a mistrial.  The trial court denied the mistrial
motion but gave the following instruction upon the jury’s return:

Ladies and gentleman, you will note that this
witness was brought in in handcuffs and chains and in jail clothing.  You
should disregard all those matters with respect to his testimony.  In other
words, you consider what he has to say and not what he’s wearing.

 

            Gibson first testified that he was in
the Walker County jail on charges of credit card abuse and possession of a
controlled substance (cocaine).  While he testified about the facts of the
accident, his and Gibson’s drug use before the accident, and his broken leg, Phillips
testified favorably for Gibson, saying that, in his opinion, Gibson was not
intoxicated at the time of the accident.  He said that Gibson had stopped using
drugs about thirty-six hours before the accident.  Phillips did not notice any
problems with Gibson’s driving, and he did not think that Gibson was speeding;
he was going sixty to seventy miles-per-hour, although Phillips admitted that
Gibson “could have been” going faster.

We review a trial court’s denial of a motion for
mistrial for an abuse of discretion.  See Hawkins v. State,
135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004).  Under that standard of review, we
review the trial court’s ruling in light of what was before the trial court at
the time the ruling was made, and we must uphold the trial court’s ruling if it
was within the zone of reasonable disagreement.  Weatherred v. State, 15
S.W.3d 540, 542 (Tex. Crim. App. 1990).

            Requiring a defendant
to be tried in jail clothing infringes upon the fundamental right to a
presumption of innocence.  Estelle v. Williams, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976).  But this same presumption of innocence does
not apply to accomplice (or codefendant) witnesses because they are not on
trial.  Craig v. State, 761 S.W.2d 89, 93-94 (Tex. App.—Beaumont 1988,
no pet.); see Kimble v. State, 537 S.W.2d 254, 254-55 (Tex. Crim. App.
1976).  Thompson v. State addresses the issue of witnesses in jail
clothing and restraints, holding that it is within the trial court’s discretion
to require that witnesses appear in jail clothing and be shackled if the
circumstances warrant.  Thompson v. State, 514 S.W.2d 275, 277-78 (Tex. Crim.
App. 1974); see Cheatham v. State, 2000 WL 34235115, at *7-8 (Tex.
App.—Eastland Sept. 21, 2000, no pet.) (not designated for publication); Craig,
761 S.W.2d at 93-94; Groh v. State, 725 S.W.2d 282, 284-85 (Tex.
App.—Houston [1st Dist.] 1986, pet. ref’d).  On appeal, the test is whether or
not the trial court abused its discretion in this regard.  Thompson, 514
S.W.2d at 278.  To properly enable a reviewing court to pass upon the trial
court’s actions, the record should contain factual matters reflecting the criteria
upon which the trial court’s discretion was exercised.  Id.  Also, the
record should reflect, as well, that the trial court had fair knowledge and
understanding of such factual matters and surrounding circumstances.  Id.

            Phillips testified that both the
prosecutor and defense counsel visited him in jail not long before trial. 
Gibson thus knew that Phillips was in jail, and he knew or should have known
that Phillips might be called as a witness.  Courts in other states have held
that the defendant has the burden to timely request that an incarcerated
witness be permitted to testify in civilian clothing and to supply it for the
witness.[5]  See,
e.g., Hightower v. State, 154 P.3d 639, 642 (Nev. 2007); People v.
Knight, --- P.3d ---, ---, 2006 WL 3437553, at * 6 (Colo. App. Nov. 30,
2006); State v. Allah Jamaal W., 543 S.E.2d 282, 287-88 & n.13 (W.Va. 2000).  Gibson did not do this, nor did he advise the trial court that he expected
favorable testimony from Phillips on the issue of Gibson’s driving and
intoxication (although the trial judge stated that he expected Phillips’s
appearance to adversely affect the State because the State was calling him as a
hostile witness).  And finally, the trial court instructed the jury to
disregard Phillips’s jail clothing and handcuffs with respect to his testimony. 
For these reasons, and although we believe it is better to require that no
witness testify in jail clothing, we hold that the trial court did not abuse
its discretion in denying the motion for mistrial.  Issue three is overruled.

Special Instruction on Depleted Evidence

 

            The State’s forensic scientists testified that the
blood sample was depleted in their testing; in fact, they were not able to do
all the testing that they wanted to do.  In his fourth issue, Gibson complains
of the trial court’s refusal to include in the charge a spoliation-type special
instruction on the State’s failure to preserve any of Gibson’s blood sample for
independent testing.  The proposed instruction instructed the jury to assume
that the blood sample would be exculpatory.

Gibson’s argument is premised on our recent holding
that “the State has a duty to preserve material evidence which has apparent
exculpatory value, encompassing both exculpatory evidence and evidence that is
potentially useful to the defense.”  Pena v. State, --- S.W.3d ---, ---,
2007 WL 1289426, at *13 (Tex. App.—Waco May 2, 2007, pet. filed).  Pena
involved the inexplicable and undocumented pretrial destruction of about
twenty-three pounds of alleged marihuana in a marihuana possession case. 
Gibson cites no authority from any jurisdiction that the State must preserve a
portion of a blood sample that is taken solely for the purpose of testing.  We
decline to extend Pena to the different situation present in this case and
overrule his fourth issue.

            Having
overruled Gibson’s four issues, we affirm the trial court’s judgment.

 

 

 

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion
delivered and filed August 1, 2007

Publish

[CR25]









[1]
              A Walker County grand jury indicted Gibson, but venue of the case
was transferred to Madison County on Gibson’s motion.





[2]
              A physician who treated Phillips testified that he tested
positive for cocaine, cannabinoids (marihuana), amphetamine, and
benzodiazepines (sedating drugs like Valium).  

 





[3]
              DPS trooper Jeter interviewed Phillips about ten days after the
accident.  He said that Phillips told him that they had gone to a gas station
to buy cigarettes, that he had last used drugs about twelve hours before the
accident, and that he undid his seatbelt and pulled himself out of the vehicle
just as it was catching on fire.

 





[4]
              The other trooper said that Gibson did not appear to be heavily
medicated and was not slurring his speech.





[5]
              “The overwhelming majority of jurisdictions hold that an
incarcerated witness should not be compelled to testify in prison clothing.”  Hightower
v. State, 154 P.3d 639, 642 & n.9 (Nev. 2007).  See generally
Michelle Migdal Gee, Annotation, Propriety and Prejudicial Effect of Witness
Testifying While in Prison Attire, 16 A.L.R.4th 1356 (1986).