

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00020-CR

RANDALL GREENOUGH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 402nd District Court
Wood County, Texas
Trial Court No. 22,720-2015

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

Randall Greenough was charged in six separate indictments with four charges of aggravated sexual assault of a child and two charges of indecency with a child by sexual contact.[1] A jury found him guilty of all six offenses. As to each conviction, the jury assessed Greenough's punishment at ninety-nine years' confinement in prison, along with a $10,000.00 fine. The trial court ordered Greenough's sentences to run consecutively. Greenough appeals, claiming (1) that he was subjected to double jeopardy when the jury returned multiple guilty verdicts on offenses that stemmed from the same act and (2) that the State's argument was egregious and the trial court's instruction to disregard its comments did not cure the alleged defect. For the reasons below, we affirm the trial court's judgment of conviction.

I.    **Background**

At the time of trial, Ginny was sixteen years of age.[2] She explained that she was not attending school and that the last grade she had completed was the eighth grade. In July 2015, which was the summer prior to what would have been Ginny's freshman year in high school, Ginny lived with her mother and "mainly hung out with family," most notably, her grandmother. On the evening of the alleged incident, Ginny was spending the night with her grandmother.

---

[1]Greenough appeals six separate convictions in our cause numbers 06-18-00019-CR through 06-18-00024-CR. In the instant case, Greenough appeals his conviction in trial court cause number 22,720-2015. There, the State charged Greenough with the offense of aggravated sexual assault of a child, alleging that on July 30, 2015, Greenough "did then and there intentionally or knowingly cause the penetration of the female sexual organ of [Ginny], a child who was then and there younger than 17 years of age and not the spouse of the defendant, by defendant's sexual organ."

[2]We refer to the child by a fictitious name in order to protect the child's privacy. *See* TEX. R. APP. P. 9.10.

2

Because her grandmother had gone to bed, Ginny went across the street around midnight to visit her great aunt.

According to Ginny, after arriving at her great aunt's house, she "was met by Randall Greenough who informed her that [her aunt] was asleep." Because Ginny was familiar with Greenough, she sat down beside him on a car. Ginny stated that, at that point, Greenough "pull[ed] out a glass pipe and beg[an] to smoke it . . . right next to [her]." After smoking the pipe, Greenough began rubbing Ginny's "shoulder and mess[ing] with [her] hair, telling [her she was] pretty in the moonlight." Ginny said she attempted to walk away, when Greenough got in front of her and told her to stay. It was then that Greenough pushed Ginny back onto the hood of the car. Ginny stated, "He then moved my shorts and panties to the side and inserted his fingers into my vagina." She continued, "He was moving [his fingers] in and out." Ginny said she began to cry and that she felt "[v]ery uncomfortable" and very scared. When asked what happened next, Ginny explained, "He then bent down and proceeded to put his mouth on my clitoris. Then put his tongue inside of my vagina." Ginny said that Greenough placed his mouth on the outside of her vagina, prior to penetrating her vagina with his tongue. When asked how she knew Greenough had penetrated her vagina with his tongue, Ginny answered, "Because I could feel it. . . . It was moving around." Ginny stated that she quietly said, "Stop, please[,]" but Greenough did "[a]bsolutely nothing" in response to her plea.

Ginny was then asked what happened next, to which she responded, "He then unbuttoned his pants and put his penis inside of my vagina. And as he was forcing intercourse, he was groping my breasts." Ginny explained that Greenough "groped" her breast with his hand and that she was

3

wearing her shirt when he did so. According to Ginny, Greenough never made her remove her panties or shorts, but he moved them aside during the incident. When asked if Greenough ever made Ginny touch his penis, she stated, "[H]e stood next to the right side of the car and made me jerk him off." She stated that this particular contact lasted at least five minutes. Ginny said that, after Greenough ejaculated next to the vehicle, he told Ginny to meet him the following day and that "he would have alcohol and marijuana." When asked what she said in response to Greenough's statement, Ginny said, "I -- I walked away." According to Ginny, she immediately returned to her grandmother's home where she "[c]ried [herself] to sleep." When asked how she felt, Ginny stated, "Very violated. Kind of felt ruined." The next morning, Ginny told her aunt, "Randall Greenough raped me."

During the punishment phase of the trial, Ginny testified that, despite never having been diagnosed as HIV positive, she had been prescribed HIV preventative medication following the incident. Ginny stated that she was required to take three pills in the morning and two in the evening and that she had to continue taking the medication for three months. Ginny explained that the medication had negative side-effects, stating, "I was very nauseous all the time. Constantly throwing up. Cold sweats. Wasn't able to sleep. It kind of made my entire body reject everything I ate, everything I drank. It made me weak. It made me feel like I wasn't a person anymore." Ginny said she had previously played on the volleyball team at school, but because the medicine made her ill, she missed several practices, which later resulted in her inability to be involved in the sport.

4

According to Ginny, her school mates labeled her "the girl with AIDS." Ginny stated, "[I]t ruined my social life. I didn't have anybody." Ginny said that, despite having numerous friends prior to the incident, her former friends did not want to talk to her, and "[p]eople didn't even want to touch [her]." Ginny stated, "It made me feel worthless and everybody had turned against me. Like I was being punished for something I couldn't control."[3] Ginny went on to explain that she was unable to make any new friends.

Ginny also stated that after the assault her "grades plummeted." As a result of her deteriorating grades, Ginny was required to attend "ISS," which she stated was a type of "punishment," and she spent the "last three to four months sitting in a secluded room." Ginny eventually "drop[ped] out of school." Ginny also explained that whenever she saw an individual who reminded her of Greenough, she would have "really bad anxiety." She would bite her fingernails and would begin to shake. Ginny said she would become anxious around her father and uncle because they had similar features as Greenough. According to Ginny, her parent's marriage suffered after the incident and, as a result, Ginny entertained thoughts of suicide in an effort to mend the family. Ginny stated, "Maybe if I wasn't here, people would just forget that it ever happened. Hoping that everybody would forget it and not hurt." Ginny said that she had trouble sleeping because she had dreams and nightmares that "replay[ed]" the assault.[4]

---

[3]It was later determined that Greenough did not have HIV.

[4]In addition to Ginny's testimony during the punishment phase of the proceedings, Dr. Frederick Gary Mears explained that the incident at issue had affected every area of Ginny's life and that, in his professional opinion, she had become a completely different person than she would have been had the incident not occurred. As for any potential long-term emotional effects, Mears stated that Ginny was "always going to live with this" for the remainder of her life. He also said that her family had been devastated and that there had been no "closure." Mears then explained "Beck's Depression Inventory," stating that it was a very reliable process to assess or quantify depression. In regard to Ginny, the assessment showed that "her depression was all encompassing, daily, and severe depression" and that

Greenough chose to testify on his own behalf during the guilt/innocence phase of the trial.[5] Greenough commenced his testimony by acknowledging that he had been sentenced to prison on two prior occasions.[6] According to Greenough, he had met Ginny only once prior to the evening at issue. Around that same time, Greenough had been using Ginny's aunt's home to shower because, due to a recent storm, his own mobile home's power and water were out of commission. Greenough explained that, after he would take a shower, he would hang his towel and rag outside on the dog kennel fence.

Despite the allegations against him, Greenough stated that he had not seen Ginny the evening of the alleged assault and that he had been in his mobile home around the time the incident was alleged to have occurred. According to Greenough, he did not commit any of the offenses of which he had been accused; he repeatedly stated, "[T]hat did not happen." Greenough was asked to explain how his DNA was found on Ginny if he did not sexually assault her, to which he responded, "The only thing I can think of is there was a towel and a rag that was left on the dog kennel fence when I took a shower. When I returned there on a Friday morning at 7:00 o'clock to

her self-esteem had "plummeted." According to Mears, Ginny would "[a]bsolutely" need future psychotherapy as a result of the assault. He also explained that Ginny took medication for post-traumatic stress disorder and medication to combat her continued inability to get a good night's sleep.

In addition, Kyle Henson, who had been a sergeant investigator with the Wood County Sheriff's Office in 2013, explained the circumstances surrounding Greenough's prior conviction for the offense of theft of $1,500.00 or more, but less than $20,000.00. The victim of the alleged theft had been an elderly woman. Henson also testified that he was familiar with Greenough's reputation in the community and that it was his opinion that Greenough was "absolutely not a law-abiding citizen."

[5]Greenough did not testify during the punishment phase of the trial.

[6]Greenough stated that he had been convicted of "[b]reaking and entering" and had been sentenced to eleven months in prison as a result of that conviction. In addition, Greenough stated that he had also been convicted of possession of a controlled substance and possession of stolen goods, for which he spent eighteen months in prison.

get that towel and rag, they were gone. They weren't there." Greenough also stated that the reason the allegations had been made against him was because "[t]he family [was] mad at [him]."

## II. Discussion

### A. Double Jeopardy

Greenough was charged in four separate indictments with the offense of aggravated sexual assault of a child. He was also charged in two separate indictments with indecency with a child by sexual contact. All six of the offenses were alleged to have occurred on July 30, 2015.[7] On appeal, Greenough maintains that he was subjected to double jeopardy when the jury returned multiple guilty verdicts on offenses that stemmed from the same act.

Our founding fathers recognized that allowing the States to subject citizens to multiple trials for the same offense "would arm Government with a potent weapon of oppression." *Stephens v. State*, 806 S.W.2d 812, 816 (Tex. Crim. App. 1990) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1997)). Both the Fifth Amendment to the United States Constitution and Article I, Section 14, of the Texas Constitution prohibit double jeopardy and thereby protect individuals from being tried twice for the same offense, possibly receiving double

---

[7]The indictments against Greenough also contained two enhancement paragraphs, which stated,

And it is further presented in and to said Court that, prior to the commission of the aforesaid offense on the 18th day of November, 2013, in cause number 22,053-2013, in the 402nd Judicial District Court of Wood County, Texas, the defendant was convicted of the felony offense of Possession of Controlled Substance, Penalty Group 1, One Gram or More, Less than Four Grams;

And it is further presented in and to said Court that, prior to the commission of the aforesaid offense on the 18th day of November, 2013, in cause number 22,055-2013, in the 402nd Judicial District Court of Wood County, Texas, the defendant was convicted of the felony offense of Theft, $1500 or More, Less than $20,000 (Elderly Individual), against the peace and dignity of the State.

After the jury returned the guilty verdicts, the court reconvened for the punishment phase of the trial. At that time, the State abandoned the 2013 drug offense against Greenough and proceeded on the theft charge to enhance the punishment range of the charged offenses to that of a first degree felony.

7

punishments for the same act. *Albernaz v. United States*, 450 U.S. 333, 343 (1981); *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Stephens*, 806 S.W.2d at 814–15. A multiple-punishments double-jeopardy claim can arise in two contexts. *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). The first is in the lesser-included offense context, where the same conduct is punished twice, "once for the basic conduct, and [another] time for the same conduct plus more." *Id.* The second occurs in a circumstance where a defendant is punished for "the same criminal act twice under two distinct statutes when the legislature intended the conduct to be punished only once." *Id.*

"To decide if conviction on multiple counts stemming from a single criminal act is constitutionally permitted, we compare the elements of the two offenses to determine if each requires proof of an element that the other does not." *Aekins v. State*, 447 S.W.3d 270, 274 (Tex. Crim. App. 2014). The *Aekins* court explained,

> In sum, *Blockburger*[8] addresses two multiple-punishment issues: the "continuous action vs. separate and distinct acts" issue and the "one act violates separate distinct statutes" issue. But the Supreme Court has said that, for purposes of multiple-punishment analysis, the two *Blockburger* tests are just tools—not the be all, end all, of statutory construction. Sometimes two offenses that are the "same" *may* both be punished; sometimes two "different" offenses may *not* both [sic] be punished. It all depends on the legislature's intent.

*Id.* at 277 (citations omitted). Moreover, a "person who commits more than one discrete sexual assault against the same complainant may be convicted and punished for each separate act, *even if the acts were committed in close temporal proximity*." *Barnes v. State*, 165 S.W.3d 75, 87 (Tex.

---

[8]*Blockburger v. United States*, 284 U.S. 299 (1932).

App.—Austin 2005, no pet.) (emphasis added) (citing *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999)).

> By way of example, the *Aekins* court stated,

> A double-jeopardy violation occurs if one is convicted or punished for two offenses that are the same both in law and in fact. Penetration without exposure is next to impossible. Penetration without contact is impossible. A single sexual act of penile penetration almost always consists of exposing the penis en route to contacting the vagina (or anus or mouth) with the penis, en route to penetration of the same with the penis. That one continuing act, the result of a single impulse, may violate three separate Penal Code provisions, but in *Patterson*, we held that the Legislature intended only one conviction for that one completed sexual assault.

*Aekins*, 447 S.W.3d at 279 (citation omitted). "In short, in Texas, as in many other jurisdictions, a defendant may not be convicted for a completed sexual assault by penetration and also for conduct (such as exposure or contact) that is demonstrably and inextricably part of that single sexual assault." *Id*. at 281.

In his first point of error, Greenough contends that his conviction of indecency with a child, in trial court cause number 23,425-2017,[9] wherein the State alleged that Greenough touched Ginny's breast with his hand, was subsumed by his conviction for aggravated sexual assault of a child in trial court cause number 22,720-2015.[10] In that case, the State alleged that Greenough penetrated Ginny's sexual organ with his sexual organ.

At trial, Ginny testified, "[Greenough] then unbuttoned his pants and put his penis inside of my vagina. And as he was forcing intercourse, he was groping my breasts." While the record

---

[9]Greenough appeals from his conviction for indecency with a child by sexual contact in our cause number 06-18-00023-CR.

[10]This is Greenough's appeal from his conviction for aggravated sexual assault of a child.

9

reflects that Greenough was involved in a single encounter with Ginny, the evidence also demonstrates that the two complained-of offenses involved two distinct acts by Greenough. This is so regardless of the fact that the two acts happened in very close temporal proximity. *See Barnes*, 165 S.W.3d at 87. Ginny testified that Greenough unbuttoned his pants, pulled her shorts to the side, and then penetrated her sexual organ with his sexual organ. Her testimony directly related to evidence supporting Greenough's conviction of aggravated sexual assault of a child, and only that particular offense. *See* TEX. PENAL CODE ANN. § 22.021 (West Supp. 2017).[11] Likewise, Ginny testified that Greenough touched her breast with his hand, which directly related to evidence supporting Greenough's conviction for indecency with a child by sexual contact, and only that particular offense. *See* TEX. PENAL CODE ANN. § 21.11 (West Supp. 2017).[12] Thus, Greenough's conduct of using his hand to touch Ginny's breast constituted a separate and distinct offense from his conduct of penetrating her sexual organ with his sexual organ. Accordingly, we cannot conclude that a double jeopardy violation occurred in this case when the jury convicted Greenough of both offenses.

We overrule Greenough's first point of error.

---

[11]Section 22.021 states, in part, that a person commits the offense of aggravated sexual assault of a child if he "intentionally or knowingly . . . causes the penetration of the anus or sexual organ of a child by any means." TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i).

[12]Section 21.11 states, in part, that a person commits the offense of indecency with a child "if, with a child younger than 17 years of age, . . . the person: . . . engages in sexual contact with the child or causes the child to engage in sexual contact." TEX. PENAL CODE ANN. § 21.11(a)(1). "[S]exual contact means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child." TEX. PENAL CODE ANN. § 21.11(c)(1).

## B.    Improper Closing Argument

Greenough contends that the State's closing statement contained improper and egregious argument. Specifically, Greenough directs us to the punishment phase of the trial when the State argued, "We're asking you to put 99 years right there (indicating). And for the fine, it will never get paid, it doesn't really matter." He contends that, by making this argument, the State

> invited the jury to disregard their oath to assess Appellant's punishment based on the law and the evidence and instead assess punishment based on some idea that the jury could disregard the fine as part of the deliberation process and just assess the maximum without any further thought because the Appellant "would not pay it anyway."

"Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement." *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). Even when an argument exceeds the permissible bounds of these approved areas, it will not be reversible unless the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts harmful to the accused.[13] *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (citing *Todd v. State*, 598 S.W.2d 286, 296–97 (Tex. Crim. App. [Panel Op.] 1980)). The prosecutor's remarks must have been a willful and calculated effort to deprive a defendant of a fair and impartial trial. *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App.1997)). The State is "to be afforded wide latitude in its jury arguments as long as counsel's

---

[13]In general, improper jury argument is considered to be a nonconstitutional error. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Nonconstitutional error that does not affect the substantial rights of an accused must be disregarded. TEX. R. APP. P. 44.2(b). When determining whether improper jury argument affects an accused's substantial rights, courts examine the following three factors: (1) the severity of the conduct; (2) the measures taken to cure the misconduct; and (3) the certainty of the conviction absent the misconduct. *Mosley*, 983 S.W.2d at 259. If the record as a whole reflects a fair assurance that the error did not influence the jury, or had but a slight effect, the conviction must not be reversed. *Id.* at 260.

argument is supported by the evidence and in good faith." *Stewart v. State*, 995 S.W.2d 187, 190 (Tex. App.—Fort Worth 1999, pet. ref'd). In most instances, a trial court's instruction to disregard the complained-of remark will cure the error. *Wilkerson v. State,* 881 S.W.2d 321, 327 (Tex. Crim. App. 1994). In order to determine whether the State's argument caused egregious error, we must consider its argument in light of the entire record, and not in isolation. *See Lewis v. State*, 191 S.W.3d 335, 339 (Tex. App.—Waco 2006, pet. ref'd).

As usual, after the State presented its punishment evidence, closing arguments began. When the State made the comment that any fine assessed against Greenough would "never get paid, it doesn't really matter," Greenough timely objected. The trial court sustained his objection and then instructed the jury to disregard the statement. The State continued,

> $10,000 on the fine. He needs the biggest sentence he can get. Simple as that. Simple as that. Based on what he's done to this girl, what he's continuing to do to this girl.
> She's going to live with this until the day she dies. Not the day he dies, the day she dies. He'll be stealing from her up until then.
> He needs 99 years and a $10,000 fine on every single one of these. And that's what we're asking for.

Even assuming the State's comment did not fall within one of the four permissible areas of argument and that the trial court's instruction to the jury did not cure the alleged error, Greenough's contention remains without merit. Upon examining the record as a whole, the evidence overwhelmingly showed, and the jury apparently found, that Ginny had been the victim of a sexual assault perpetrated upon her by Greenough, who also happened to be a friend of the family. In addition, there was evidence that, as a result of Greenough's actions, Ginny suffered physically, emotionally, and psychologically and that her suffering would very likely continue for a substantial

12

period of time, if not her entire lifetime. The jury heard testimony that a portion of Ginny's suffering would require continued counseling, which the jury could have implied would result in a monetary loss to Ginny. Contrary to Greenough's contention, the jury did exactly what the State asked it to do; that is, it gave Greenough the "biggest sentence" it believed to be appropriate under the facts and circumstances of this case.

Based on this record, we cannot find that the State's comment was "a willful and calculated effort [by] the State to deprive [Greenough] of a fair and impartial trial." *See Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997). We, therefore, overrule Greenough's second point of error.

## III.    Conclusion

We affirm the trial court's judgment of conviction.


                                              Ralph K. Burgess
                                              Justice


Date Submitted:     June 7, 2018
Date Decided:       July 13, 2018

Do Not Publish

13